IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RICHARD WAYNE TAYLOR | § | |
| VS. | § | CIVIL ACTION NO. 9:19cv149 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Richard Wayne Taylor, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Prior Proceedings

Following a jury trial in the 159th District Court of Angelina County, Texas, petitioner was convicted of murder. He was sentenced to life imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Twelfth District. *Taylor v. State*, 2017 WL 2962988 (Tex.App.-Tyler 2017). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Taylor v. State*, No. PD-0988-16.

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order. *Ex parte Taylor*, Appl. No. WR-61,434-16.

Grounds for Review

Petitioner asserts the following grounds for review: (1) his conviction is void because the trial court judge executed a defective oath of office and (2) he received ineffective assistance of counsel because counsel failed to: (a) object to evidence of the victim's character; (b) secure an expert toxicologist to testify on petitioner's behalf; (c) cross-examine a witness regarding inconsistent statements; (d) cross-examine an officer about his supplemental police report; (e) object

to the editing of an audio recording; (f) object to the admission of the autopsy report and photographs; (g) secure an expert medical examiner to reexamine the cause of death; (h) request a *Franks* hearing; (i) interview the pathologist about the reliability of the victim's statements and (j) challenge the validity of his conviction based on the trial judge's defective oath of office.

Factual Background

The intermediate appellate court summarized the facts of petitioner's case as follows:

> On October 31, 2013, Lufkin Police Department Corporal Kevin Jackson was dispatched to investigate a reported stabbing. When he arrived at the scene, he found the victim, Shirley Taylor, lying on the floor of her residence in a pool of blood. Taylor had multiple stab wounds. Jackson used articles of clothing to apply pressure to one of the wounds while he attempted to keep Taylor conscious by snapping his fingers in her face and asking her questions. He described her as drifting in and out of consciousness. Jackson testified that, at one point, Taylor stated that she was "fading out." Nonetheless, Jackson stated that she experienced moments of coherence. During this time, Jackson asked Taylor who did this to her, and she identified Appellant, her husband, as her assailant. Thereafter, Taylor was transported to the hospital. She died approximately four to five hours later.

In his appellate brief, petitioner summarized his testimony at trial as follows:

> The Appellant chose to testify on his own behalf, and testified that he did not live with the Complaining witness although they were married. He stated that he would visit her at least twice a week. The Appellant introduced through Exhibit No. 9, his scheduled visitation with the Complainant for two weeks prior to his arrest in this particular incident. Exhibit No. 9 was a schedule provided by his parole officer, Robert Debar, of Nacogdoches, Texas.
>
> The Appellant testified that shortly after 9:00 a.m., he received a call from Complainant. Appellant testified that Complainant called him twice, and asked him to request from his parole officer, permission for him to visit with her, as she was not feeling well. The Appellant then stated that he called and received permission from his parole officer to visit with Complainant.
>
> The Appellant then testified that upon his arrival at the Complainant's apartment complex, he noticed that a glass storm door of the Complainant's apartment was open approximately a foot as he was parking his car. Appellant then testified that he cooked the Complainant breakfast, rubbed her feet, and was present when a Sheila Sterns and Pat Matthews visited with her in the apartment. Appellant testified that Matthews and Stern then left after a brief visit, and the caretaker, Kavonda Washington, arrived. Appellant then said that he left around 12:50 p.m. to 12:55 p.m. The Appellant then testified that he had intentions of driving his motor vehicle to Houston to visit an uncle. His intention was to make arrangements for a liver transplant for the Complainant, and that he needed a more reliable form of transportation, as his vehicle was not running well.

> Before he left the apartment complex at around 12:50 p.m. he noticed that the Complainant was outside, and that she was talking to a man who had been a passenger in a dark blue or teal colored Chrysler 300, parked at the apartment complex. He noticed that this individual had stepped out of the vehicle and had what appeared to be a bedspread in his hand. He noticed that the individual was talking to the Complainant. He testified that the Complainant waved at him and acknowledged that she knew who the people were and he proceeded on his trip to Houston.
>
> The Appellant began to experience mechanical problems with his vehicle and he pulled his vehicle over just off of Highway 59, and looked for any possible problems. He believes that while he was there, he was scratched by some thorn bushes on his neck and chest area.
>
> The Appellant continued on his trip to Houston, but because of mechanical problems with his vehicle in Diboll, Texas, he turned onto Thompson Street and left the vehicle in that place. Appellant testified that he hitched a ride with a white male to Corrigan, Texas. When he got to Corrigan, his clothes were wet, so he purchased some more clothes and tennis shoes in the Family Dollar story in Corrigan. While he was walking south on 59 he was approached by Lieutenant Grissom who took him into custody. At this time he requested an attorney, and then he was taken in front of Judge Yankee where his rights were read to him on the charge of aggravated assault with a deadly weapon. Lufkin PD came and took him into custody very soon after that.

<u>Standard of Review</u>

Title 28 U.S.C. § 2254 authorizes the district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reached a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court has on a materially indistinguishable set of facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts. *Id*. An unreasonable application of law differs from

3

an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

Analysis

### *Improper Oath of Office*

Initially, petitioner complains of various irregularities regarding the oath of office sworn to by the judge who presided over his criminal proceeding. He states that the persons to whom the oath was sworn to failed to incorporate their official seal of office into the body of the oath sworn to by the judge. He further complaints that the judge failed to execute and refile a valid oath of office with the Texas Secretary of State.

Petitioner contends that the irregularities he cites violated both Texas state law and the Texas Constitution. Even if that is true, this ground for review does not provide petitioner with a basis for relief in this proceeding. Title 28 U.S.C. § 2254 permits this court to issue a writ of habeas corpus if a petitioner is in custody in violation of the Constitution or laws or treaties of the United States.

However, an alleged error regarding state law does not provide grounds for federal habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986). Specifically, a claim regarding the oath of office of a judge who presides over a state criminal trial arises under state law and is therefore not cognizable on federal habeas review. *Turner v. Quarterman*, 2009 WL 2406203, at *8 (W.D. Tex. Aug. 3, 2009); *Ramos v. Dretke*, 2005 WL 39144, at *3 (N.D. Tex. Jan. 6, 2005). As a result, this ground for review does not provide petitioner with a basis for relief.

### *Ineffective Assistance of Counsel*

    A. <u>Legal Standard</u>

When addressing the issue of what a petitioner must prove to demonstrate an ineffective assistance of counsel claim, courts look to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). In order to show that counsel was ineffective a petitioner must demonstrate:

> First ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot be said that the conviction ... resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. In order to prove the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. at 111.

A habeas petitioner must "affirmatively prove," not just allege, prejudice. *Day*, 556 F.3d at 536. If a petitioner fails to prove the prejudice part of the test, the court need not address the question of counsel's performance. *Id*. A reviewing court "must strongly presume that trial counsel

5

rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland*, 466 U.S. at 687.

Whether the representation was deficient is determined as measured against an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 119, 2006 (5th Cir. 1983)). "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.3d 871, 876 (5th Cir. 1989)).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating a similar claim on direct appeal of a federal conviction. *Harrington*, 562 U.S. at 101. The key question on federal habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. The deferential standard applicable to federal habeas review requires federal courts to apply a "doubly deferential" standard of review to claims of ineffective assistance, under which both the conclusions of the state court and strategic decisions of defense counsel are given the benefit of the doubt. *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013).

B. Application

1. Failure to Object to Evidence of the Victim's Character

Petitioner faults counsel for failing to object to testimony regarding the good character of the victim as well as a photograph of the victim in church which was admitted as an exhibit. He states this evidence was not relevant to the charge against him and was designed to make the jury sympathetic towards the victim and prejudiced against petitioner. Petitioner asserts that under Texas

Rule of Evidence 404(a)(2), evidence concerning a victim's peaceful character is only admissible if the defendant introduces evidence indicating the victim was the first aggressor.

Petitioner appears to be referring to testimony from the victim's sister. After being shown a photograph of the victim, the sister said it was a picture of the victim at church, that the victim loved God and that every Sunday the victim looked forward to going to church and serving as an usher.

As petitioner states, evidence concerning the victim's character was not relevant and counsel could have objected on that basis. However, this would have drawn attention to the sister's testimony. Perhaps more importantly, an objection at that point could have been considered by the jury to be disrespectful and insensitive to the loss suffered by the witness. As a result, it would have been reasonable trial strategy for counsel not to have objected. Moreover, there is not a reasonable probability the result of the proceeding would have been different if the brief testimony regarding the victim's character been declared inadmissible.

2. <u>Failure to Secure Toxicologist</u>

Petitioner states his attorney should have filed a motion seeking funds to hire an independent toxicologist to determine whether the victim's out of court statements were unreliable and involuntary because she was under the influence of cocaine.[1] Petitioner also notes that the victim had been subjected to severe trauma. He states counsel failed to obtain permission during a bench conference to subpoena an independent toxicologist and that counsel failed to subpoena employees of the Lufkin Fire Department to offer their assessments of the victim's mental state.

In an affidavit provided in connection with petitioner's state application for writ of habeas corpus, counsel states that after reviewing the case, he did not believe an independent toxicologist would have provided a different opinion regarding the autopsy report. Petitioner has submitted no evidence contradicting counsel's belief. Further, his assertion that an independent toxicologist

---

[1] The pathologist testified that a toxicology test showed a metabolite of cocaine was in the victim's blood. He also stated that while the amount was significant, it did not contribute to her death.

would have provided favorable testimony concerning the reliability of the victim's statements is wholly speculative. Petitioner also provides no evidence showing that the testimony of members of the Lufkin Fire Department would have been favorable if they had been called to testify. As there is no evidence demonstrating what testimony an independent toxicologist or members of the Lufkin Fire Department would have provided, it cannot be concluded there is a reasonable probability the result of the proceeding would have been different had such testimony been obtained.

    3. <u>Failure to Cross-Examine Witness Regrading Inconsistent Statements</u>

Petitioner states that witness Kavonda Washington[2] provided testimony at trial which was inconsistent with a prior statement. He asserts counsel was ineffective for failing to use the prior statement to impeach her trial testimony.

Petitioner states that at trial Ms. Washington stated that the person she saw leaving the building was carrying a little cooler side-bag. He states that at trial, counsel pointed out that in her statement to police, Ms. Washington only said that she saw the person going out the back door. He states counsel failed to cross-examine her as to who she made her prior inconsistent statement to and as to the place and time she made the statement.

In his affidavit, counsel stated he reviewed evidence provided by the prosecutor prior to trial and did not specifically remember any substantially inconsistent statements that could have been used to impeach Ms. Washington's testimony. Counsel cross-examined Ms. Washington about her prior inconsistent statement. Petitioner has failed to show that counsel's failure to also ask her when, where and to whom the statement was made resulted in prejudice.

    4. <u>Failure to Cross-Examine Officer About Supplemental Police Report</u>

Officer Devon Trotti testified at trial. Petitioner states counsel failed to question the officer about a portion of his testimony that was inconsistent with a statement contained in his supplemental

---

[2] Ms. Washington was a nurse's aid working for the Texas Home and Health Company. She was at the house before and after the victim was attacked.

police report. He states counsel also failed to lay a proper predicate to support the admission into evidence of the supplemental police report.

In a supplemental police report, Officer Devin Trotti stated that after he spoke with Ms. Washington, he tried to speak to Laddy Washington.[3] However, as a result of Mr. Washington's high level of intoxication, Officer Trotti could not understand one word he was saying. At trial, Officer Trotti stated that Mr. Washington was giving him the same information that Ms. Washington had provided.

Later in his testimony, Officer Trotti stated Mr. Washington told him that at one point he heard what appeared to be a disturbance in the bedroom between the victim and petitioner. This indicates that while Officer Trotti may not have been able to understand Mr. Washington at one point, he did understand what he said somewhat later. Officer Trotti also testified that he did not believe Mr. Washington was a good witness, that he was slurring and that he could smell alcohol on Mr. Washington. Based on these additional statements during Officer Trotti testimony, it cannot be concluded counsel's failure to take the actions suggested by petitioner fell below an objective standard of reasonableness or resulted in prejudice.

5. <u>Failure to Object to Editing of Audio Recording</u>

Petitioner states that after the prosecutor admitted to pre-editing exhibit 36, an audio zip drive,[4] counsel failed to renew his objection to the admission of the exhibit based on it being altered. The prosecutor stated he eliminated the portion of the recording where Ms. Washington and Mr. Washington made statements. Petitioner contends that if counsel had raised this objection, the court would have sustained it and the jury would not have heard the statements of the victim.

While petitioner states the prosecutor admitted to pre-editing the exhibit so that it only included the conversation between Corporal Jackson and the victim, he does not explain how editing

---

[3] Mr. Washington was a relative of Ms. Washington. He testified that he came to the victim's apartment in response to a call from Ms. Washington and saw petitioner running out the back door.

[4] The exhibit was an audio recording of the conversation between Corporal Jackson and the victim.

out the remaining portion of the exhibit would have been misleading to the jury. He states that the portion of the zip file that was not played to the jury would have shown Mr. Washington was drunk and contradicted his testimony that he had only one can of beer. However, the testimony of Officer Trotti described above indicated Mr. Washington was more intoxicated than he would have been if he had only drank one beer.

Petitioner has failed to identify a meritorious basis for an objection by counsel. Nor has he demonstrated the unplayed portions of the recording would have been favorable. He has therefore failed to show that counsel's failure to make this objection fell below an objective standard of reasonableness or caused prejudice.

6. <u>Failure to Object to Autopsy Report and Photographs</u>

Petitioner states counsel failed to object to the testimony of the pathologist, the admission into evidence of the report of the pathologist and several photographs from the autopsy. Petitioner states that after the victim died, a justice of the peace, less than 24 hours after the time of death, signed an order authorizing pathologists to perform an autopsy. Petitioner also asserts this evidence was objectionable because the pathologist violated a state statute by performing the autopsy without having used due diligence to contact the victim's next of kin.

Article 49.32 of the Texas Code of Criminal Procedure provides that a physician may not perform an autopsy without the written informed consent of a person authorized to give consent under Article 49.33, or without using due diligence to identify or contact a person authorized to give consent. The article further provides that if a person authorized to give consent cannot be identified or contacted, the physician may, as authorized by a justice of the peace, perform an autopsy not less than 24 hours nor more than 48 hours from the time of death. However, Article 49.31 provides that Article 49.32 does not apply to an autopsy a justice of the peace determines is required under applicable law. Petitioner acknowledges that in this case a justice of the peace determined an autopsy was necessary. As a result, any objection counsel would have made to testimony regarding the autopsy, the autopsy report or photographs from the autopsy would have been without merit.

10

Counsel's failure to make such an objection therefore did not fall below an objective standard of reasonableness or result in prejudice.

      7.  <u>Failure to Hire Medical Examiner to Reexamine the Cause of Death</u>

Petitioner states that prior to trial he made a *pro se* motion asking that the court provide funds to permit him to hire an independent medical examiner. He states that at a pretrial hearing on April 25, counsel withdrew the motion. Petitioner contends that an independent medical examiner could have determined that the victim died accidentally, as a result of cocaine toxicity.

In his affidavit, counsel said he did not hire an independent medical examiner because the cause of death was not at issue.

There was evidence that the victim had been stabbed numerous times and was squirting blood from multiple wounds. Petitioner has provided no evidence indicating an independent medical examiner would have found the death to be accidental. In light of the victim's condition, and as petitioner provides no evidence that an independent expert would have found the death to be accidental, counsel's failure to hire this type of expert did not fall below an objective standard of reasonableness or cause prejudice.

      8.  <u>Failure to Request *Franks* Hearing</u>

Petitioner also faults counsel for failing to request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 171 (1978), to challenge the veracity of statements by Corporal Jackson and Detective Jamie Jinkins which were relied upon by Corporal Nick Malone in making an affidavit to support a felony assault complaint against petitioner. Petitioner states the swearing officer inaccurately stated that the victim, rather than Ms. Washington, called 911, incorrectly stated the victim's first name and made an incorrect statement regarding a knife being found with blood on it.

Under *Franks*, a defendant is entitled to an evidentiary hearing on a motion to suppress evidence if he shows that (1) the allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not

sufficient to support a finding of probable cause. *United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996).

In this case, however, after the criminal complaint was filed, petitioner was indicted by a grand jury. That action superseded the complaint and made the issue of whether there was probable cause for the complaint moot. *United States v. Cloud*, 2009 WL 10703353 (W.D. Tex. May 27, 2009). Moreover, there is no indication that the incorrect statements petitioner cites were either deliberate falsehoods or made with a reckless disregard for the truth. Nor has he shown that the remaining portions of the affidavit would have been insufficient to permit a finding of probable cause. Counsel's failure to request a hearing therefore did not fall below an objective standard of reasonableness or lead to prejudice.

9. <u>Failure to Interview Pathologist</u>

Petitioner also asserts counsel should have used his hired investigator, Brandon Brucia, to interview Dr. John Ralston, the pathologist, to determine whether the victim's dying statements were unreliable due to cocaine in her system. Again, however, petitioner fails to provide any evidence showing that, if Dr. Ralston had been interviewed prior to trial, he would have opined that the victim's statements were unreliable. In the absence of such evidence, it cannot be concluded petitioner suffered prejudice because an interview was not conducted.

10. <u>Failure to Challenge Trial Judge's Defective Oath of Office</u>

As explained above, petitioner asserts the oath sworn to by the trial judge failed to contain the seal of the person who administered the oath and that the judge failed to correct this omission. In this ground of review, he states counsel should have requested a new trial based on the trial judge having executed a defective oath of office, depriving him of the authority to preside at trial.

Petitioner cites no authority for the proposition that a new trial would have been granted based on the oath of office not containing a seal. Further, petitioner does not explain why counsel would have had any reason to suspect there were any irregularities concerning the trial judge's oath

of office. As a result, counsel's failure to seek a new trial on this basis did not fall below an objective standard of reasonableness and did not result in prejudice.

## Conclusion

Petitioner's first ground for review does not provide him with a basis for relief. In addition, for the reasons set forth above, the rejection by the state courts of petitioner's claims of ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established law. The petition should therefore be denied.

## Recommendation

This petition for writ of habeas corpus should be denied.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1).

Failure to file objections bars a party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1419 (5th Cir. 1996) (*en banc*).

SIGNED this 11th day of August, 2022.

_____
Zack Hawthorn
United States Magistrate Judge